United States District Court
Southern District of Texas
**ENTERED**
August 27, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARGARET SIMON, individually and as Next Friend of VICTORIA SIMON, deceased, and JOSEPH SIMON, individually and as Next Friend of VICTORIA SIMON, deceased, § § § § § § Plaintiffs, § § vs. § § HARRIS COUNTY, § § Defendant. § § § | CIVIL ACTION NO. H-25-2329 |

**MEMORANDUM OPINION AND ORDER**

Margaret Simon and Joseph Simon, individually and as next friends of Victoria Simon, deceased, sued Harris County under 42 U.S.C. § 1983 on behalf of themselves and Victoria's minor child. (Docket Entry No. 2). The Simons allege that Victoria died after Harris County Jail medical officials provided her with improper medical care and Jail detention officials failed to observe and monitor her condition. (*Id.*). The County moved to dismiss, arguing that the Simons failed to state a claim for relief under any theory of municipal liability. (Docket Entry No. 5). The Simons moved to strike the County's motion to dismiss. (Docket Entry No. 6). The County responded to the motion to strike, and the Simons filed a reply. (Docket Entry Nos. 10, 12). The Simons also filed a substantive response to the motion to dismiss, and the County filed a reply. (Docket Entry Nos. 9, 11). Having reviewed the lengthy amended complaint, the motions, the responses and replies, the record, and the law, the court denies the Simons's motion to strike, grants the County's motion to dismiss in part, and denies it in part. The reasons for these rulings are explained below.

I.      **Background**

The amended complaint alleges that Victoria Simon was admitted to the Harris County Jail on September 29, 2022. (Docket Entry No. 2, p. 11). The Simons allege that Victoria had a history of drug use and that she was in withdrawal when she was admitted to the Jail. (*Id.*). The Simons allege that Jail medical staff were aware that Victoria was in withdrawal and that she needed a specific medication during the withdrawal process. (*Id.*). The Simons allege that Jail medical staff did not properly evaluate Victoria and her condition and instead simply placed her in a single quarantine cell to "detox." (*Id.*). They allege that Jail medical staff did not give Victoria the specific withdrawal medication that she was supposed to take and instead gave her medications that were not appropriate for her condition. (*Id.*).

On October 2, 2022, Jail nurses and a Jail detention officer found Victoria unresponsive in her cell when they came to conduct a tuberculosis test. (*Id.*). Victoria was pronounced dead by a Jail physician later that day. (*Id.* at 12). The Simons allege that if Jail officials had conducted the proper face-to-face observations and monitoring, they "would have seen" that Victoria was in distress and needed aid, they would have provided that aid, and those actions would have prevented Victoria's death. (*Id.* at 11-12).

In November 2024,[1] the Simons, together with six other plaintiffs, sued the County under § 1983, alleging claims based on unconstitutional conditions of confinement, failure to train, and failure to supervise. (*Id.*). The plaintiffs alleged that the following customs or practices caused their injuries: (1) overcrowding and understaffing at the Jail; (2) failing to properly observe and monitor detainees; (3) denying detainees adequate and proper medical care; (4) institutionalizing

---

[1] The initial complaint was filed on August 16, 2024. *See Chavez-Sandoval, et al. v. Harris County*, Civil No. H-24-3072 (S.D. Tex.), at Dkt. 1. The amended complaint, which is the live pleading in this case, was filed November 22, 2024. *Id.* at Dkt. 13.

2

the use of excessive force against detainees; and (5) fostering a culture of violence among the detainees. (*Id.*). Because the plaintiffs' claims arose from seven different incidents that occurred on seven different dates in at least three different Jail facilities and that involved at least seven different individual officers, the court severed the plaintiffs' claims into separate actions. (Docket Entry No. 1).

The County moved to dismiss each plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). In its motion to dismiss the Simons's claims, the County argues that they failed to state a legally sufficient claim under any theory of municipal liability. (Docket Entry No. 5). The Simons moved to strike the separate motions to dismiss on the ground that they were an improper attempt to avoid the court's page limits for motions. (Docket Entry No. 6). They also filed a substantive response to the motion to dismiss. (Docket Entry No. 9). The County filed a reply. (Docket Entry No. 11).

## II.     The Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the plaintiff's complaint to state a claim upon which relief can be granted. When the court considers a motion under Rule 12(b)(6), "the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). This includes publicly available judicial documents and other documents attached to the motion to dismiss if they are referred to in the plaintiff's complaint and are central to the claims. *See Payne v. City of Houston*, Appeal No. 24-20150, 2025 WL 999085, at *1 (5th Cir. Apr. 3, 2025).

In ruling on a motion to dismiss, the court "construes the complaint liberally in favor of the plaintiff," "takes all facts pleaded in the complaint as true," and considers whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (cleaned up). But despite this liberal standard, to survive a motion to dismiss under Rule 12(b)(6), the complaint must allege specific facts, not conclusory allegations. *See Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 305 (5th Cir. 2020). Neither conclusory allegations nor unwarranted deductions of fact are admitted as true for purposes of a motion to dismiss. *See Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The complaint must also include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). If the facts alleged are facially sufficient, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (cleaned up). But if the complaint does not set forth "enough facts to state a claim to relief that is plausible on its face," it must be dismissed. *Id.* at 570.

**III.    Discussion**

    **A.    The Simons's Motion to Strike**

The Simons move to strike the County's motion to dismiss, arguing that by filing a separate motion as to each plaintiff, the County improperly evaded the court's page limits for motions. (Docket Entry No. 6). The amended complaint in this action is 223 pages long and contains 1,169 paragraphs, many containing allegations relating to plaintiffs other than the Simons and their

daughter. (Docket Entry No. 2). Under these circumstances, the County's separate motions directed to the allegations relating to each plaintiff were not improper. In addition, on December 30, 2024, the court granted the County's unopposed motion for leave to file motions in excess of the page limits. *See Chavez-Sandoval v. Harris County*, Civil No. H-24 3072 (S.D. Tex.), at Dkt. 35. The Simons's motion to strike the County's motion to dismiss, (Docket Entry No. 6), is denied.

### B. The County's Motion to Dismiss

The County moves to dismiss the Simons's claims, arguing that they have failed to state a claim against the County under any theory of municipal liability. While municipalities may be held liable under § 1983 for violating a person's constitutional rights, municipalities are not vicariously liable for the unconstitutional actions of their employees. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). A plaintiff seeking relief against a municipal defendant, such as the County, must establish that the allegedly unconstitutional acts are "directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). In general, this requires the plaintiff to (1) identify an official policy, (2) that was promulgated by a municipal policymaker, and (3) that was the moving force behind the violation of a constitutional right. *See Verastique v. City of Dallas, Tex.,* 106 F.4th 427, 432 (5th Cir.), *cert. denied,* 145 S. Ct 772 (2024) (quoting *Johnson v. Harris County*, 83 F.4th 941, 946 (5th Cir. 2023)). The factual allegations necessary to sufficiently plead these elements depend on the nature of the municipal liability claim. But in all cases, "to get past the pleading stage, a complaint's description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts." *Peña v. City of Rio Grande City, Tex.*, 879 F.3d 613, 622 (5th Cir. 2018).

Municipal liability claims against a county based on its policies or practices generally arise under one of two theories: (1) claims based on the conditions of confinement, or (2) claims based on an "episodic act or omission." *See Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019). Claims based on conditions of confinement are "attacks on general conditions, practices, rules, or restrictions of pretrial confinement." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644 (5th Cir. 1996) (en banc). Conditions-of-confinement claims generally concern "durable restraints or impositions on inmates' lives like overcrowding, deprivation of phone or mail privileges, the use of disciplinary segregation, or excessive heat." *Garza*, 922 F.3d at 633-34. Claims based on episodic acts or omissions generally involve "a particular act or omission of one or more officials" and "an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc). In general, "conditions-of-confinement claims challenge the constitutionality of pervasive, systemic policies and customs themselves; episodic-acts-or-omissions claims challenge the constitutionality of the way in which a policy or custom was applied by a jail official in a particular instance." *Feliz v. El Paso County*, 441 F. Supp. 3d 488, 497 (W.D. Tex. 2020) (citing *Estate of Henson v. Wichita County, Tex.*, 795 F.3d 456, 466–67 (5th Cir. 2015)).

In their response to the County's motion to dismiss, the Simons contend that they have alleged sufficient facts to state conditions-of-confinement claims based on: (1) the County's failure to observe and monitor detainees; (2) the County's failure or refusal to provide medical care or the provision of improper or insufficient medical care, and (3) the systemic understaffing and overcrowding at the Jail. (Docket Entry No. 9, p. 11). The Simons also contend that they have alleged sufficient facts to state claims for failure to train and failure to supervise. (*Id.* at 28-30).

In the alternative, the Simons contend that they have alleged episodic-acts-or-omissions claims based on Jail officials' failure to properly observe and monitor Victoria and their failure to provide her with proper medical care. (Docket Entry No. 9, pp. 25-28). No rule bars a plaintiff from pleading both a conditions-of-confinement claim and an episodic-acts-or-omissions claim. *See Shepherd v. Dallas County, Tex.*, 591 F.3d 445, 452 n.1 (5th Cir. 2009). When a plaintiff does so, the court may evaluate the claims either together or separately. *Id.* The court addresses each type of claim in turn.

### 1. The Conditions-of-Confinement Claims

Because pretrial detainees have not been convicted of a crime, conditions of confinement that "amount to punishment" are unconstitutional. *Cadena v. El Paso County*, 946 F.3d 717, 727 (5th Cir. 2020) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Punishment will be inferred "if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless." *Garza*, 922 F.3d at 632 (quoting *Bell*, 441 U.S. at 539). Conditions of confinement that amount to punishment can arise from either an explicit policy or "an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials." *Shepherd*, 591 F.3d at 452 (quoting *Hare*, 74 F.3d at 645). Because the plaintiff in a conditions-of-confinement claim is challenging a policy or practice, he need not allege that an individual state actor acted knowingly or intentionally. *See Estate of Henson*, 795 F.3d at 463. Instead, to state a legally sufficient conditions-of-confinement claim, the plaintiff must allege facts showing: (1) that a rule, restriction, custom, or practice was extensive or pervasive; (2) that the rule, restriction, custom, or practice was not reasonably related to a legitimate governmental objective; and (3) that the rule, restriction, custom, or practice was the moving force or actual cause of the violation of the detainee's

constitutional rights. *See Cadena*, 946 F.3d at 727 (quoting *Duvall v. Dallas County, Tex.*, 631 F.3d 203, 207 (5th Cir. 2011) (per curiam)).

### a. The Claim for Failing to Observe and Monitor Detainees

The Simons contend that they have stated a conditions-of-confinement claim based on the Jail's alleged policy or practice of failing to observe and monitor detainees. They allege that Jail officials routinely failed to observe and monitor detainees in the manner and at the intervals required by the Texas Commission on Jail Standards. But the failure to observe and monitor detainees, standing alone, is not a constitutional violation, and a violation of state laws or standards cannot be the basis for imposing liability under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 332-33 (1986). Instead, a detainee presenting a conditions-of-confinement claim based on a failure to observe and monitor must show that she had a specific basic human need that could not be met absent periodic observation and monitoring by jail officials and that the jail's pervasive pattern of "gross inattention" to providing for that need amounted to punishment and actually caused the violation of the detainee's rights. *See, e.g., Shepherd*, 591 F.3d at 454. Under this standard, the Simons must allege facts showing that (1) the Jail had an extensive or pervasive rule, restriction, custom, or practice of failing to observe or monitor detainees; (2) that the rule, restriction, custom, or practice was not reasonably related to a legitimate governmental objective; and (3) that the rule, restriction, custom, or practice actually caused the denial of Victoria's constitutional rights. *See, e.g., Estate of Bonilla ex rel. Bonilla v. Orange County, Tex.,* 982 F.3d 298, 308-09 (5th Cir. 2020); *Duvall*, 631 F.3d at 207.

In their amended complaint, the Simons have sufficiently alleged facts showing that the Jail had an extensive and pervasive custom or practice of failing to observe or monitor its detainees in compliance with the Texas Commission on Jail Standards requirements. The Simons's amended

complaint alleges numerous incidents of Jail officials failing to timely observe and monitor detainees. (Docket Entry No. 2, pp. 71-73; 77-80; 84-85; 96; 107-08; 110-27; 134; 136-37; 145; 147-48; 152; 155-56, 160-70; 176-78; 180-81). These allegations are supported by multiple noncompliance reports from the Texas Commission on Jail Standards that identify similar deficiencies in the observation and monitoring of detainees. (*Id*. at 48-51, 53-57, 60, 63, 65-67, 69, 71). When considered in total and taken as true, as required at this stage of the litigation, these allegations are sufficient to plead that the County knew of and acquiesced to an extensive and pervasive practice of failing to properly observe and monitor detainees at the Jail. The Simons have also alleged, and the County does not dispute, that there is no legitimate government interest in failing to observe and monitor detainees to ensure that their basic human needs are being met.

But the Simons have failed to allege facts that could show that this policy or practice actually caused a violation of Victoria's constitutional rights. The Simons allege no *facts* showing that Jail officials did not observe or monitor Victoria at the intervals required by the Texas Commission on Jail Standards, that Jail officials skipped an observation period, that they failed to timely observe and monitor Victoria's condition, or that her death was due to a failure to observe and monitor. They allege no *facts* showing that Victoria's condition deteriorated over such a period of time that it would have been detected had she been properly observed and monitored. Instead, the Simons allege only that "if" Jail officials had been properly observing and monitoring Victoria, they "would have" seen her deteriorating condition and "could have" rendered aid. (*Id.* at 11-12). The court need not accept such speculative and conclusory allegations or unwarranted deductions of fact as true at this stage of the litigation. *See Iqbal,* 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Having failed to allege facts showing that the County's alleged policy or practice of failing to observe and monitor detainees actually caused Victoria's death, the Simons fail to state a conditions-of-confinement claim for a failure to observe and monitor. The County's motion to dismiss the Simons's conditions-of-confinement claim based on a failure to observe and monitor is granted. While the Simons did not request leave to amend, the court cannot find that amendment would be futile. This claim is dismissed, without prejudice, because the court cannot find that amendment would be futile.

### b. The Claim for the Denial of Adequate Medical Care

The Simons also contend that they have stated a conditions-of-confinement claim based on the denial of proper and adequate medical care. To plead such a claim, the Simons must allege facts showing that (1) the Jail had an extensive or pervasive custom or practice of failing to provide proper or timely medical care to its detainees; (2) that this custom or practice was not reasonably related to a legitimate governmental objective; and (3) that this custom or practice was the moving cause of the denial of Victoria's constitutional rights. *See, e.g., Feliz*, 441 F. Supp. 3d at 498-99.

The Simons's amended complaint alleges numerous incidents of detainees experiencing delayed, denied, inadequate, or improper medical care. (Docket Entry No. 2, pp. 71-72, 74-86, 89-92, 94, 99-104, 105-06, 108-13, 117-19, 123, 125-27, 132-34, 136-37, 147-56, 159-61, 163-65, 172-73). These allegations are supported by a 2009 Department of Justice investigative report that found "systemic deficiencies" in the provision of medical care to detainees. (*Id*. at 31-34). The allegations are also supported by multiple noncompliance reports from the Texas Commission on Jail Standards that identify similar deficiencies in the provision of medical care to detainees. (*Id*. at 46-47, 52, 58-59, 67). When considered in total and taken as true, as required at this stage of the litigation, these allegations are sufficient to plead the first element of the Simons's claim—that

the County knew of and acquiesced to an extensive and pervasive practice of failing to provide adequate and proper medical care to detainees at the Jail. The Simons also allege sufficient facts to support the second element, that the delays or denials of proper and adequate medical care were not reasonably related to a legitimate governmental objective.

The amended complaint also alleges sufficient facts to show that the Jail's extensive and pervasive policy of failing to provide proper and adequate medical care was the moving cause of Victoria's death. The Simons allege that Jail medical staff knew that Victoria was withdrawing from drugs, but over the four days that she was in the Jail, medical staff either failed or refused to provide her with medications necessary for her to safely get through withdrawal. The Simons also allege that over the four-day period, medical staff provided Victoria with medications that were inappropriate for someone withdrawing from drugs and suffering from her other medical conditions. These facts, taken as true, are sufficient to show that Victoria's death was the result of the Jail's extensive and pervasive failure to provide proper medical care to detainees. The County's motion to dismiss their conditions-of-confinement claim based on a failure to provide proper medical care is denied.

### c. The Claim of Overcrowding and Understaffing

The Simons also contend that they have stated a conditions-of-confinement claim based on systemic overcrowding and understaffing at the Jail. This claim fails because the Simons do not allege facts showing that either the alleged overcrowding or understaffing caused Victoria's death.

Subjecting detainees at a county jail to overcrowding or understaffing is not, by itself, a constitutional violation. *See Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). A detainee bringing a conditions-of-confinement claim based on overcrowding or understaffing must allege facts

11

showing that those conditions actually caused a constitutional violation which resulted in his injury.

Throughout its 223 pages, the amended complaint alleges that every violation of every detainees' constitutional rights resulted in some way from the alleged overcrowding and understaffing at the Jail. But the amended complaint does not allege facts showing that the alleged overcrowding and understaffing was the moving cause of Victoria's death. The Simons do not allege that Victoria suffered harm from the mere presence of overcrowding or understaffing at the Jail. Instead, the harm they identify resulted from Jail officials' alleged failure to observe and monitor Victoria and to provide her with proper and timely medical treatment. Because the Simons do not allege facts that could show that overcrowding and understaffing were the moving cause of Victoria's death, they fail to state a conditions-of-confinement case based on these conditions.

The County's motion to dismiss the Simons's conditions-of-confinement claim based on overcrowding and understaffing is granted. This claim is dismissed without prejudice because the court cannot find that amendment would be futile.

### 2.    The Episodic-Act-or-Omission Claims

As an alternative to their conditions-of-confinement claims, the Simons argue that they have sufficiently pleaded episodic-acts-or-omissions claims based on the failure to observe and monitor Victoria and the failure to provide her with proper and adequate medical care. (Docket Entry No. 9, pp. 25-26).

Unlike a conditions-of-confinement claim, an episodic-acts-or-omissions claim "faults specific jail officials for their acts or omissions." *Estate of Henson*, 795 F.3d at 463 (quoting *Shepherd*, 591 F.3d at 452). For liability to attach, "the municipality must cause the constitutional tort, which occurs when execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Bolton v. City of Dallas, Tex.,* 541 F.3d 545, 548 (5th Cir. 2008) (per curiam) (quoting *Monell,* 436 U.S. at 694) (cleaned up). This requires the plaintiff to show "(1) that the municipal employee violated the pretrial detainee's clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference." *Garza*, 922 F.3d at 633 (quoting *Brumfield* v. *Hollins*, 551 F.3d 322, 331 (5th Cir. 2008)).

In many cases, the element of causation distinguishes a conditions-of-confinement claim from an episodic-acts-or-omissions claim. *See Estate of Henson*, 795 F.3d at 464. Causation turns on whether the plaintiff was harmed by the allegedly unconstitutional conditions themselves or by the actions of a municipal employee. *Id.* The case of *Scott v. Moore*, 114 F.3d 51 (5th Cir. 1997) (en banc), provides an example. The plaintiff in *Scott* sued the city, alleging that an officer sexually assaulted her while she was in pretrial detention. *Id.* at 52. In her conditions-of-confinement claim against the city, she alleged that understaffing at the jail led to the assault. *Id.* In rejecting this claim, the court noted that while Scott alleged that inadequate staffing allowed the incident to occur, the actual harm she alleged was the sexual assault. *Id.* at 53. The court explained:

> In many jail condition cases, the conditions themselves constitute the harm. This is true, for example, where inadequate food, heating, or sanitary conditions themselves constitute miserable conditions. Here, however, Scott did not suffer from the mere existence of the alleged inadequate staffing, but only from Moore's specific sexual assaults committed on but one occasion. Consequently, this case does not fit well within the conditions-of-confinement category.

*Id.* at 53-54. The Fifth Circuit has since identified a "rule" that when a particular municipal actor is interposed between the injured party and the municipal defendant, causation does not result from the policy itself and the case is properly treated as one based on an episodic act. *See Garza*, 922 F.3d at 633.

### a. The Claim for the Failure to Observe and Monitor Detainees

While the Simons contend that they have alleged an episodic-acts-or-omissions claim based on the failure to observe and monitor as an alternative to their conditions-of-confinement claim, they do not allege facts showing that any Jail official "interposed" between Victoria and the County acted with subjective deliberate indifference. In their amended complaint, the Simons allege that if Jail officials had been properly observing or monitoring Victoria over the four days she was in the Jail, her death would not have occurred. But they allege no facts showing that Victoria was not observed and monitored in compliance with state standards or that any failure to observe and monitor her was due to the subjective deliberate indifference of any individual Jail official. Without such allegations, the Simons's amended complaint fails to state an episodic-acts-or-omissions claim based on a failure to observe and monitor.

In their response to the County's motion to dismiss, the Simons allege for the first time that all detention officers knew and understood that the purpose of observation and monitoring is to ensure that "if a need arises such as attempted suicides, medical emergencies, or fights" the officers can react and prevent injury. (Docket Entry No. 9, p. 27). They allege that this is particularly true for inmates in the "detox cells." (*Id.*). They allege that despite knowing of the risks to detainees in the detox cells, Jail officials failed to properly observe and monitor Victoria's condition and instead ignored her. (*Id.*). But the court may not consider new facts alleged for the first time in a response to a motion to dismiss when ruling on that motion. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("Because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint."). Making statements about facts in a response to a motion does not plead those facts. These newly presented facts may not be considered to deny an otherwise meritorious motion to dismiss.

14

The County's motion to dismiss the Simons's episodic-acts-or-omissions claim based on a failure to observe and monitor is granted. This claim is dismissed without prejudice because the court cannot find that amendment would be futile.

### b. The Claim for the Denial of Medical Care

The Simons also contend that they have stated an episodic-acts-or-omissions claim for the denial of proper medical care. They allege that over the four days that Victoria was in the Jail, the medical staff failed to provide her with a necessary medication to support her through her drug withdrawal and instead provided medications inappropriate for her condition. But as with their claim for the failure to observe and monitor, the Simons do not allege facts showing that any individual medical official acted with subjective deliberate indifference to Victoria's medical condition and medical needs. Instead, as explained in connection with the conditions-of-confinement claim, they allege that the County's pervasive practice of denying proper medical care to all detainees resulted in Victoria's death. Because no individual medical official is interposed between Victoria's death and the County, the Simons's amended complaint fails to state an episodic-acts-or-omissions claim based on the denial of adequate and proper medical care.

The County's motion to dismiss the Simons's episodic-acts-or-omissions claim based on a failure to provide adequate and proper medical care is granted. This claim is dismissed without prejudice because the court cannot find that amendment would be futile.

### 3. The Claim for a Failure to Train

The Simons also allege that the County is liable for failing to train Jail employees. "A failure-to-train action is a type of *Monell* claim." *Hutcheson v. Dallas County, Tex.*, 994 F.3d 477, 482 (5th Cir. 2021). A municipality's failure to train its detention officers and medical staff in constitutional practices and limits "can amount to a policy if there is deliberate indifference to an

obvious need for training where citizens are likely to lose their constitutional rights on account of [detention officer] novices." *Peterson v. City of Fort Worth*, 588 F.3d 838, 849 (5th Cir. 2009). To allege a claim for municipal liability on a failure-to-train theory, a plaintiff must allege facts showing that: "(1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Hutcheson*, 994 F.3d at 482; *see also Edwards v. City of Balch Springs, Tex.*, 70 F.4th 302, 312 (5th Cir. 2023). This standard requires the plaintiff to "allege with specificity how a particular training program is defective." *Edwards*, 70 F.4th at 312; *see also Armstrong v. Ashley*, 60 F.4th 262, 277 (5th Cir. 2023) (a conclusory allegation that officers received deficient training "across the board" is not enough to plead deliberate indifference). The plaintiff must also allege facts showing that the municipal policymaker made "a deliberate choice to follow a course of action . . . from among various alternatives." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) (cleaned up). This requires the plaintiff to allege facts showing "a pattern of similar constitutional violations by untrained employees," which would show that the policymaker had notice that the particular course of training is inadequate but failed to respond. *See Porter v. Epps*, 659 F.3d 440, 446-47 (5th Cir. 2011). To allege a pattern, the plaintiff must allege enough sufficiently similar prior incidents to support an inference that alleged violations result from a systemic lack of training. *See Johnson*, 83 F.4th at 946-47. The plaintiff must also allege facts that could show that the failure to train is so closely related to the alleged injury that it cannot be "attribut[ed] to a particular officer's shortcomings." *Garza*, 922 F.3d at 637 (quoting *City of Canton*, 489 U.S. at 388-91).

The Simons's amended complaint does not meet this standard. The only factual allegation the Simons make about training is to point to the 2023 report from the Texas Commission on Jail Standards, which found that certain officers had not received training on suicide prevention. (Docket Entry No. 2, p. 60). The Simons allege no other facts about how the County trains its detention officers or medical staff. They allege no facts that could show that a training program does not exist nor do they identify any specific deficiencies in the County's training that resulted in the constitutional violations they allege that Victoria suffered.

The thrust of the Simons's claim is that if the County was properly training its detention officers and medical staff, Jail staff would have provided Victoria with proper medical care and treatment and she either would not have suffered a sudden fatal event or she would have been found earlier and received lifesaving treatment. But a "[f]ailure to train cannot be alleged by the simple assertion that an occurrence of the incident proves the need for additional or different training." *Oliveria v. City of Jersey Vill.*, No. 4:21-cv-3564, 2023 WL 7222124, at *4 (S.D. Tex. Nov. 2, 2023) (quoting *Garcia v. Harris County*, No. 4:22-cv-198, 2022 WL 2230469, at *2 (S.D. Tex. June 2, 2022)); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) ("[P]roof that the injury could have been prevented if the officer had received better or additional training cannot, without more, support liability."). The Simons's factual allegations are insufficient to show that Victoria's death was attributable to a systemic failure to train rather than to the individual decisions and shortcomings of trained detention officers and medical staff. And although the Simons repeatedly allege that the County failed to train its detention officers and medical staff, their bare allegations of a systemic failure to train, without facts, are legal conclusions. The court is not bound to accept legal conclusions as true when ruling on a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

17

The Simons fail to allege facts that could show that the County had an ongoing policy or practice of failing to train its detention officers and medical staff and that this policy or practice caused the violation of Victoria's constitutional rights. Their allegations are legally insufficient to state a claim for failure to train. The Simons's claims based on an alleged failure to train are dismissed, without prejudice because the court cannot find that amendment would be futile.

### 4. The Claim for a Failure to Supervise

The Simons also allege that the County is liable for failing to supervise Jail employees. To state a claim for municipal liability on a theory of a failure to supervise, the plaintiff must allege facts showing that (1) the city failed to supervise the officers involved; (2) there is a causal connection between the failure to supervise and the violation of the plaintiff's rights; and (3) it was, or should have been, obvious to municipal policymakers that the "highly predictable consequence" of not supervising the officers was that the officers would violate the plaintiffs' constitutional rights. *See, e.g., Peterson*, 588 F.3d at 850; *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc). As with a claim for failure to train, a plaintiff claiming a failure to supervise must allege facts showing a pattern of similar violations that would make the need for more or different supervision "obvious." *City of Canton,* 489 U.S. at 390. "Plaintiffs must show that in light of the duties assigned to specific officers or employees the need for more or different [supervision] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Murray v. LeBlanc*, 629 F. Supp. 3d 437, 457 (M.D. La. 2022) (cleaned up).

As with their failure-to-train claim, the Simons's claim for failure to supervise does not meet this standard. The Simons allege no facts that could show that the County did not supervise its detention officers or medical staff. They allege no facts showing that the need for more or

different supervision of the detention officers and medical staff involved in the incident was so obvious that it could reasonably be said that the County was deliberately indifferent to the need for additional or better supervision. In short, the Simons allege no facts showing that deficiencies in the County's supervision plan caused the alleged violation of Victoria's constitutional rights.

The Simons's allegations are legally insufficient to state a claim for failure to supervise. Their failure-to-supervise claim is dismissed, without prejudice because the court cannot find that amendment would be futile.

### IV. Conclusion

The Simons's motion to strike the County's motion to dismiss, (Docket Entry No. 6), is denied. The County's motion to dismiss, (Docket Entry No. 5), is granted in part and denied in part. The Simons must file any motion seeking leave to file a second amended complaint, with the proposed second amended complaint attached, no later than **October 6, 2025**.

SIGNED on August 27, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge